THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 13-cv-02875-RPM

KF 103-CV, LLC,
a Colorado limited liability company

       Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
a Wisconsin corporation,

       Defendant.

---

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This insurance dispute arises out of an underlying state court action, *Woodmen Heights Metropolitan District et al., v. Prairie Home Vista, LLC et al.*, Case No. 08CV4553, in the District Court for El Paso County, Colorado ("the Underlying Action").

In this federal diversity action, plaintiff KF 103-CV, LLC ("KF 103") seeks declaratory relief determining that defendant American Family Mutual Insurance Company ("American Family") was and is obligated to defend and indemnify KF 103 with respect to claims brought against KF 103 in the Underlying Action. KF 103 also seeks damages based on claims of breach of contract and violation of duties of good faith and fair dealing; unfair claims settlement practices in violation of C.R.S. § 10-3-1104(1)(h), and improper denial of insurance benefits in violation of C.R.S. §§ 10-3-1115 and 10-3-1116. American Family denies liability.

On March 17, 2014, American Family moved pursuant to Fed.R.Civ.P. 56, seeking summary judgment in its favor on the issue of its duty to defend. KF 103 moved pursuant to Fed.R.Civ.P. 56, seeking determinations that American Family breached the duties of defense and indemnification.

The parties have submitted a joint Statement of Undisputed Facts; the Insurance Policy; orders and pleadings from the Underlying Action, and other evidence. The material facts are not in dispute.

The Underlying Action arose out of an easement dispute. The background and procedural history of that dispute are as follows:

In late 2004 and 2005, an entity known as Keller/Campbell Joint Venture, LLC purchased
real property in El Paso County, Colorado from Infinity Holding Company, LLC and Howard Family Investments, LLC, and H2 Land Co., LLC. (collectively "the Infinity Group") pursuant to
two Purchase Agreements. In November 2006, Keller/Campbell Joint Venture, LLC conveyed the property to KF 103.

The property is commonly known as Cumbre Vista. KF 103 planned the development of a new residential subdivision known as the Cumbre Vista Subdivision.

The Purchase Agreements required the seller – i.e., the Infinity Group – to complete improvements to boundary streets adjoining the property. Those streets included an intersection of Ski Lane and Sorpresa Lane (the "Intersection"), located generally at the southernmost boundary of the property.

-2-

The Infinity Group designed a reconfiguration of the Intersection that involved changes to roads, including modification of the width and elevation of Sorpresa Lane. Grading work for construction of the Intersection began in approximately May 2007.

Owners of adjoining properties objected, contending that the planned modification of the Intersection would violate an express easement that provided access to their properties ("the Easement"). Construction of the Intersection stopped from approximately June 2007 to mid-November 2007 due to those objections. In March, 2008, Infinity Group conveyed the property underlying the Intersection to Woodmen Heights Metropolitan District (" the Metropolitan District").

On September 4, 2008, the Metropolitan District and KF 103 commenced the Underlying Action as a quiet title action, seeking determination of rights in the right-of-way Easement and a declaration that the Easement could be relocated. (Pl.'s Ex. 4).[1] The named defendants included William M. Peck ("Peck"); Darrel H. Oliver, Sr. and Kelly Ann M. Oliver ("the Olivers"); William Marchant and Maureen M. Marchant ("the Marchants"); Marilyn J. Howell ("Howell"); C. Arlene Nance ("Nance"), and Susan Hanson ("Hanson") (collectively, "the Neighbors").

In early October 2008 – when the litigation was still in its initial stage – construction of the Intersection was completed.

In October and November 2008, the Neighbors answered the complaint and some filed *pro se* counterclaims. Over a year later, on March 22, 2010, the El Paso County District Court

---

[1]The plaintiff group included Woodmen Heights Metropolitan District No. 1, Woodmen Heights Metropolitan District No. 2, Woodmen Heights Metropolitan District No. 3. For ease of reference the three districts are referred to collectively as "the Metropolitan District."

dismissed those counterclaims without prejudice on the ground that they failed to provide proper

notice of the specific claims being alleged.  (Pl.'s Ex. 6).

On October 13, 2010, the El Paso County District Court held a bench trial and issued oral

rulings.  (Pl.'s Ex. 7; Def.'s Ex. B).  The Court rejected the claims of KF 103 and the

Metropolitan District, concluding that the Neighbors' Easement rights had been impaired by the

reconstruction of the Intersection and the plaintiffs had not complied with requirements under

Colorado law for the relocation of easements.  When announcing those rulings, the Court stated:

> I would note that the developer as early as 2005 and 2006 by deciding to unilaterally
> go forward with this development without getting the consent of owners of recorded
> easements across his property did so at its own risk, and did so frankly in violation
> of Colorado Common Law as it relates to easements. So doing so subjected them to
> the possibility of significant financial impact even though they probably didn't know
> it. They had no, um, bad state of mind if you will or bad will whatsoever. I'm sure
> they were doing the business they do best, which is planning for them for the most
> financially feasible and appropriate use of their property, and unfortunately by doing
> so they significantly interfered with the rights of easement owners.

(Def.'s Ex. B, Tr. (Oct. 13, 2010) at 18:13-24).  The Court ordered the Metropolitan District and

KF 103 to provide a proposal of how and when the Neighbors' easement rights could be

restored. (*Id.* at 20:11-22).

On December 23, 2010, the El Paso County District Court issued a written order on post-

trial motions.  (Pl.'s Ex. 8; Def.'s Ex. C).  In that order the Court stated, *inter alia*:

> It was also of considerable note in my findings that the plaintiff developer was
> alerted early on to the easement issues that interfered with his proposed grading and
> changes. That developer was apparently advised by the City that he should consider
> relocating his road alignment to not interfere with the deeded easements. That
> warning was given at a time when the developer could have avoided much of this
> dispute and either not changed the defendants' deeded rights of way or otherwise
> have made changes that only minimally impacted those defendants [sic] easements.
> The developer decided that he would lose some lots if he left Sorpresa and Ski Lane
> in their original size and elevation. The developer elected to go ahead with the plan
> that is currently in place, heedless of the City's warning to consider other

> alternatives. So the fact that the developer has chosen to make dramatic changes to Sorpresa Lane and has further placed utilities in that street was a choice made with full knowledge of the potential risks. In unilaterally making the road changes that it did, the developer trespassed on the deeded rights of way and has substantially damaged Sorpresa and the defendants' rights to it.

(Def.'s Ex. C at pp. 2-3). The order stated that a hearing on the issue of remedies would be required and that the Neighbors were "free to ask for restoration, or damages or both." The Court required them to "submit a pleading in advance of the hearing to specify the remedies that each party seeks." (*Id.* at p. 5).

During the relevant time period, KF 103 was the named insured on several consecutive Commercial General Liability Policies issued by American Family.[2] In January, 2011, KF 103 notified American Family of the Underlying Action and the potential for counterclaims to be filed against KF 103.

In May, 2011 through mid-August 2011, the Neighbors asserted counterclaims against KF 103 as follows:

Peck filed his "Statement of Claims 2nd Amended Counterclaim" on May 18, 2011. ("Peck's 2011 Counterclaims," Pl.'s Ex. 9; Def.'s Ex. D). In that pleading Peck alleged a claim of trespass against KF 103 and requested equitable relief as the remedy. He also sought sanctions for alleged misconduct of its counsel.

Hanson filed a letter with the subject line "Documentation of my Counterclaims" on June 8, 2011, stating that she was seeking compensation for deprivation of the use of the access road;

---

[2]American Family issued its policy number 05-XH4523-02 to KF 103, effective November 22, 2007 to November 22, 2008. (Def.'s Ex. A). That Policy was renewed for the years of 2008 to 2009, 2009 to 2010 and 2010 to 2011. (Joint Statement of Undisputed Facts ¶¶ 1-3).

-5-

trespass; compensation for physical and emotional distress, and "punitive damages for intentional and willful actions taken on the part of the developers, with full knowledge and awareness of their actions." (Def.'s Ex. E).

The Marchants, Howell, and Nance jointly filed Amended Counterclaims on August 18, 2011, alleging three claims styled as (1) trespass and continuing trespass; (2) negligence, and (3) restoration.  ("Marchants' 2011 Counterclaims," Pl.'s Ex. 10; Def.'s Ex. F).  They requested injunctive relief, including restoration of the Easement, and damages for "the loss of value to Defendants' properties" and "inability to access their properties," interest, fees and costs.

On August 29, 2011, KF 103 formally tendered the defense of the counterclaims to American Family in an email which attached the transcript of the El Paso County District Court's October 13, 2010 oral ruling; the written Order dated December 23, 2010; Peck's 2011 Counterclaims, and the Marchants' 2011 Counterclaims.  (Pl.'s Exs. 11; see also Pl.'s Ex.12).

In a letter dated October 17, 2011, American Family declined to provide a defense or indemnity to KF 103.  (Pl.'s Ex. 12).

KF 103 requested reconsideration of the denial of coverage, and on March 14, 2012, American Family issued another letter denying coverage.  (Pl.'s Exs. 13 & 14).

In July 2012, amended counterclaims and third party complaints were filed in the Underlying Action.  The Marchants, Howell, and Nance jointly filed a Second Amended Counterclaim and Third-Party Complaint on July 17, 2012, alleging eight claims against KF 103 styled as (1) trespass and continuing trespass; (2) negligence; (3) restoration; (4) negligent misrepresentation; (5) negligence [sic] misrepresentation; (6) prescriptive easement; (7) Nance trespass, and (8) civil conspiracy. ("the Marchants' 2012 Counterclaims," Pl.'s Ex. 15, Def.'s

Ex. G).  Again they requested injunctive relief, including restoration of their Easements,

"damages for the loss of use to Defendants' Easements"; "damages for the loss of value to

Defendants' properties", and "damages for Defendants' inability to access their properties."

Their 2012 Counterclaims also included requests for "damages for the personal injuries of

annoyance and discomfort"; damages for the personal injuries of annoyance and discomfort";

"damages for personal injuries of emotional distress and mental anguish;" exemplary damages;

interest, costs and attorney's fees.  With respect to the claim styled as "Nance trespass," Nance

requested restoration or damages for damage to her individual property based on allegations that

the plaintiffs or third party defendants had regraded a portion of her property, constructed a road

across its northern boundary and removed large quantities of soil without her consent.

Peck filed his Third Amended Counterclaim and Third-Party Complaint on July 18,

2012, alleging claims against KF 103 and others styled as trespass and continuing trespass;

negligence; restoration; negligent misrepresentation; prescriptive easement; and civil conspiracy

("the 2012 Peck Counterclaims," Pl.'s Ex. 15a, Def.'s Ex. H).

In a letter dated August 30, 2012, KF 103 re-tendered the defense of the counterclaims to

American Family.  That letter incorporated KF 103's original tender dated August 29, 2011, and

enclosed the Marchant Group's 2012 Counterclaims and Peck's 2012 Counterclaims.  (Pl.'s Ex.

16).

By letter dated September 21, 2012, American Family again denied KF 103's request for

defense and indemnity.  (Pl.'s Ex. 17).

In October 2012, the El Paso County District Court held a second trial in the Underlying

Action for the purpose of determining remedies.  On November 26, 2012, the Court issued a 24-

page written order captioned "Order Re:  Equitable Remedies and Judgment," reconfirming  the

Court's legal conclusions from the first trial and making additional findings and conclusions.

(Pl.'s Ex. 18).  The Court found in favor of the Neighbors on their claim of trespass and also

concluded that "there was a Civil Conspiracy among virtually all of the Plaintiffs and third party

defendants to trespass on the Neighbor's [sic] easements." (*Id.* at 10).  The Court also found in

favor of the Neighbors on their claim of negligence.

With respect to the civil conspiracy claim, the Court found that by March 2005, the

individuals and entities "on the developers' side of the lawsuit" (which included KF 103) had

either constructive or actual notice of the Neighbors' easement rights by virtue of a title

commitment and survey and by the Neighbors' use of the road for years.  The Court further

found that those persons had agreed to a plan that resulted in the destruction of deeded and

prescriptive right-of-way easements.  (*Id.* at 10).  The Court found that such actions were not

taken with "malicious" intent, describing testimony showing that KF 103 and others had relied

on advice of counsel who told them that the easements could be legally moved without consent,

condemnation or court action.  The Court stated that "while various entities may have relied on

advice of counsel, that does not absolve them of their responsibility for the trespass." (*Id.* at 12).


With respect to KF 103's participation in the conspiracy, the Court found *inter alia*:

... While KF 103 was likely acting with an innocent assumption that the neighbors [sic] claims were being legally dealt with, it nonetheless is equally responsible for trespass and being part of a conspiracy to trespass.  It had a legal duty to insure that the adverse claims to the roads were legally resolved before it graded the land.

Keller and KF 103 were equally present throughout the run up to this suit.  Mr. Gonzales participated and identified himself to the board and the neighbors as representing both Keller and KF 103.  When it became obvious to Mr. Larsen of the City that the neighbors that the neighbors [sic] had more than just passing complaints, the City approached Mr. Gonzales in an attempt to move the road further north into the proposed development.  On behalf of Keller and KF 103, he refused, insuring that the trespass would continue....

(*Id.* at 12-13).

With respect to claim of negligence, the Court stated:

All of the developer parties owed a duty to the various neighbors to take reasonable steps to insure that they do not trespass or damage the real property of the neighbors.  Each individual and entity violated that duty by ignoring title exceptions, survey and prescriptive uses made of the roads.  The fact that they may have relied on the advice of counsel is a matter between them and counsel and does not relieve them of their duties to the neighbors.

(*Id.* at 22).

The Court ordered partial restoration of the Easement, and awarded the Neighbors damages for loss of value to their homes, loss of use of Ski Lane, the partial loss of Sorpresa, stress and inconvenience.  Two third party defendants were ordered to restore 36,000 cubic yards of dirt to the Nance property.[3]

In January, 2013, KF 103 requested that American Family reimburse KF 103 for its attorneys' fees and costs in defending against the Neighbors' claims in the Easement Litigation.

---

[3]Final judgment in the Underlying Action entered on October 15, 2013 (Pl.'s Ex. 20). American Family states that the judgment is now on appeal.

American Family did not respond to that request, and KF 103 filed this complaint on September

10, 2013.

The substantive law of Colorado governs this dispute.

The first issue to be determined is whether American Family had a duty to fund KF 103's

defense of the counterclaims.  The duty to defend is distinct from and broader than the duty to

indemnify.  *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996).  In Colorado,

the duty to defend is to be determined from the complaint in the underlying action:

> An insurer's duty to defend arises when the underlying complaint against the insured
> alleges any facts that might fall within the coverage of the policy. The actual liability
> of the insured to the claimant is not the criterion which places upon the insurance
> company the obligation to defend. Rather, the obligation to defend arises from
> allegations in the complaint, which if sustained, would impose a liability covered by
> the policy.

*Hecla Mining Co. v. N.H.  Ins. Co.,* 811 P.2d 1083, 1089 (Colo. 1991) (citation, footnote,

brackets and internal quotation marks omitted) ("*Hecla*"); s*ee also Cotter Corp. v. Am. Empire*

*Surplus Lines Ins. Co.*, 90 P.3d 814, 828 (Colo. 2004).

"In the duty to defend context, the 'complaint rule' operates to cast a broad net, such that

when the underlying complaint alleges *any facts* or claims that might fall within the ambit of the

policy, the insurer must tender a defense."  *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74

P.3d 294, 301 (Colo. 2003) (emphasis in original.)  "An insurer seeking to avoid its duty to

defend an insured bears a heavy burden." *Hecla*, 811 P.2d at 1089.

When determining whether the insurer was obligated to provide a defense, the "court

must examine the nature of the facts alleged and claims pled in the complaint ... liberally with a

view toward affording the greatest possible protection to the insured." *Cyprus*, 74 P.3d at 297.

In coverage disputes, the insured has the burden of proving that the claim comes within the coverage of the policy, and the insurer has the burden of proving that the facts fall within a policy exclusion. *See Colorado Intergovt'l. Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo.App.2008); *Rodriguez v. Safeco Ins. Co.*, 821 P.2d 849, 853 (Colo.App.1991).

The Insuring Agreements in all versions of the Policy are identical.  The Policy's Insuring Agreement provides, in pertinent part:

1.     Insuring Agreement

      a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
                          ***

      b.     This insurance applies to "bodily injury" and "property damage" only if:

          (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

          (2)     The "bodily injury" or "property damage" occurs during the policy period; and

          (3)     Prior to the policy period, no insured listed under Paragraph 1 of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

-11-

    c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1, of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily Injury" or "property damage" after the end of the policy period.

    d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    (1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    (3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur

(Def.'s Ex. A at AmFam 000014).

In the Policy, the term "occurrence" is defined as, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Def.'s Ex. A at AmFam 000023).

Under Colorado law, an accident is considered to be "an unanticipated or unusual result flowing from a commonplace cause." *Union Ins. Co. v. Hottenstein*, 83 P.3d 1196, 1201 (Colo. App. 2003) (citing *Carroll v. CUNA Mut. Ins. Soc'y*, 894 P.2d 746, 753 (Colo. 1995)). "[I]t is the 'knowledge and intent of the insured' that make injuries or damages expected or intended rather than accidental." *Hoang v. Monterra Homes LLC*, 129 P.3d 1028, 1034 (Colo.App. 2005) (quoting *Hecla*, 811 P.2d at 1088) (*rev'd on other grounds,* 149 P.3d 798 (Colo. 2007)).

KF 103 asserts that coverage was triggered by the factual allegations supporting the claims of negligence in the Marchants' 2011 Counterclaims and the Marchants' and Peck's 2012

Counterclaims.  KF 103 also points to the claim of trespass in Peck's 2011 Counterclaims and the claims of negligent misrepresentation alleged in the Marchants' and Peck's 2012 Counterclaims.  KF 103 asserts that any of those claims, if sustained, would impose a liability covered by the Policy.

American Family characterizes all of the 2011 and 2012 counterclaims as premised on intentional conduct – KF 103's knowing violation of the Neighbors' Easement rights.

"It is ... the factual allegations in the complaint, and not the legal claims, that determine an insurer's duty." *Gerrity Co. v. CIGNA Prop. & Cas. Co.*, 860 P.2d 606, 607 (Colo. App. 1993)(collecting cases).

The allegations supporting the claim of trespass in Peck's 2011 Counterclaims do not trigger coverage.  Peck alleged:

> 10.    Counterclaims Defendant and Plaintiff KF 103-CV, LLC ("KF-103"), a Colorado limited liability company in good standing with its principal place of business located at 536 Chapel Hills Drive, Suite 150, Colorado Springs, CO 80920, owns certain property adjoining the Deeded Right of Way, known as the Cumbre Vista Subdivision and is a party to the development of the Cumbre Vista Subdivision ("Cumbre Vista"), and is a named plaintiff in the initial Complaint dated September 3, 2008, and as such is a party to damage to [sic] the Neighbors....

> 17.    The Counterclaim Defendants WHMD, and KF-103 (collectively "Parties") unilaterally altered the historic roadway and topography of the land within the Deeded Right of Way without permission of the Counterclaimant/Third Party Plaintiff Peck and Marchant, Oliver, Howell, Nance, and Hanson (collectively "Neighbors") as the dominant estate owners, and without first obtaining judicial determination granting permission to alter the Deeded Right-of-Way and as such trespassed on the easement and the easement rights of the [sic] Peck, Marchant, Howell, and Oliver as dominant estate owners.

(Def.'s Ex. D, at ¶¶ 10, 17).

Those allegations cannot be read as including allegations of an accident or unanticipated consequences.  "Trespass is the physical intrusion upon property of another without the permission of the person lawfully entitled to the possession of the real estate."  *Burt v. Beautiful Savior Lutheran Church,* 809 P.2d 1064, 1067 (Colo. App. 1990) (citing *Magliocco v. Olson*, 762 P.2d 681 (Colo.App.1987)).  The requisite intent is "the intent to do the act that itself constitutes, or inevitably causes, the intrusion."  *Burt,* 809 P.2d at 1067 (citing *Miller v. Carnation Co.*, 33 Colo. App. 62, 516 P.2d 661 (1973)).  Colorado does not recognize a tort of "negligent trespass."  *Burt,* 809 P.2d at 1067.

Contrary to KF 103's arguments, coverage was not triggered by the claims of negligent misrepresentation in the Marchants' and Peck's 2012 Counterclaims.  The allegations supporting those claims are that KF 103 falsely represented the identity of the party responsible for the Cumbre Vista development during its dealings with the City; falsely represented to the Neighbors that a barricading of the Easement was only temporary, and falsely represented to the City and others that KF 103 owned all the real property under Sorpresa Lane.  (Def.'s Ex. G at ¶¶ 96-104; Def.'s Ex. H at ¶¶ 69-99).  Although captioned as claims of negligent misrepresentation, those are allegations of intentional misrepresentations.  In addition, as discussed more fully below, there are no allegations that those the alleged misrepresentations caused "bodily injury" or "property damage," as those terms are defined in the Policy.

The focus of the inquiry must be the allegations supporting the claims of negligence.  In the Marchants' 2011 Counterclaims, the negligence claim is premised on the following allegations:

19.     Prior to commencing development of Cumbre Vista, KF-103 was aware of the location and scope of Defendants' easement as admitted in Plaintiffs [sic] complaint.

20.     Defendant KF-103 proceeded to close portions of Defendant's easement and to alter other portions of the easement so that it was unusable.

21.     Despite knowing that they had no legal right to interfere with and destroy Defendants' easement, KF-103's employee Ed Gonzales told Counterclaimants that he (KF-103) could do whatever they wanted with the easement.

22.     Actions taken by KF-103 included blocking portions of the easement along with the complete destruction of other portions of the easement.

23.     KF-103 as the owner and/or future owner of Cumbre Vista required that the Subdivision be designed in such a way so as to insure that KF-103 received the highest possible number of developable lots.

24.     KF-103 knew, or in the exercise of due care, should have known that the design mandated by KF-103 would result in the destruction of Defendants' easement and specifically in the lowering of Sorpresa Lane to such an extent that it no longer provides reasonable access to counter claimants' properties.

25.     The completion of this work was done recklessly and without regard to Defendant's rights in and to the easement.

26.     The design and building of subdivision by KF-103 and /or its agents constitutes negligence in that it ignores the Defendants rights in and to the easements.

27.     In addition the bringing of this lawsuit by KF-103 against Defendants with out satisfying the legal requirements as set forth and in Plaintiffs' complaint constitutes negligence by KF-103 and its agents and employees.

28.     As a direct and proximate result of KF-103's negligence as stated above Counterclaimants have been damaged in an amount equal to the cost of restoring the easement and having to defend themselves against the untrue allegations set forth in Plaintiffs complaint.

29.     In addition to the cost of restoring Defendants easement as a proximate result of KF-103's actions these Defendants property values have also been greatly diminished and reduced, and these Defendants have been greatly inconvenienced in their ability to access their properties.

-15-

(Def.'s Ex. F at ¶¶ 19-29).

Inclusion of phrases such as "in the exercise of due care should have known," "recklessly" and "negligence" imply that KF 103 failed to appreciate that relocation of the Intersection would violate the Neighbors' Easement.  However, those terms and phrases are conclusory, and it is obvious from the totality of the allegations that the claim is premised on intentional disregard of the Neighbors' Easement rights.  Although styled as a claim of negligence, this is a claim of trespass.

In the Marchants' 2012 Counterclaims, the negligence claim is based on the following allegations:

57.     Plaintiffs and Third Party Defendants know or should have known that the design of the Cumbre Vista subdivision as approved by Keller Homes and KF 103 required that Defendants' Easements be altered and/or destroyed....

68.     Prior to commencing development of the Cumbre Vista subdivision, the Infinity Parties, KF-103 and Keller Homes had knowledge and were aware of the location and scope of Defendants' Easements and that said Easements provided the Defendants with the sole means of direct access to public roads.

69.     Despite this knowledge the Infinity Parties, Keller Homes and KF-103 unilaterally closed portions of Defendants' Easements and altered other portions of the Easement so that they were unusable.

70.     The Plaintiffs and Third Party Defendants had a recognized legal duty to conform to a certain standard of conduct to protect Defendants against unreasonable risks.

71.     Plaintiffs and Third Party Defendants breached their duty to conform to the standard required by law (a) by failing to contact Defendants and obtain Defendants approval to relocate the Easements and (b) by failing to obtain a Declaratory Order from the Court approving any relocation of the Easements before altering and destroying the Easements.

72.     Despite knowing that they had no legal right to interfere with and destroy Defendants' Easements, Mr. Gonzalez in his capacity as an employee of Keller

Homes and as a manager of KF 103 told Defendants that they could do whatever they wanted with the Easements.

73.    Actions taken by Mr. Gonzalez as manager of KF-103 and as an employee of Keller Homes included blocking portions of the Easements along with authorizing and/or allowing the complete destruction of other portions of the Easements.

74.    Mr. Gonzalez as an employee of Keller Homes exerted authority over the design and construction of Sorpresa Lane at the intersection with Ski Lane by rejecting the City's request to move Sorpresa Lane northward to mitigate the negative impact to the Defendants [sic] access.

75.    The actions of Mr. Gonzalez were done within the scope of his authority as an employee of Keller Homes and as a manager of KF 103 and as such constituted acts of Keller Homes and KF 103.

76.    KF-103 and Keller Homes as the owner and/or future owner of Cumbre Vista required that the Subdivision be designed so as to insure that the highest possible number of buildable lots were planned and developed.

77.    Plaintiffs and Third Party Defendants are professional [sic] in the practice of land development and as such have a duty to exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty will subject them to liability for negligence.

78.    Plaintiffs and Third Party Defendants knew or in the exercise of due care, should have known that the subdivision design mandated by KF-103 and Keller Homes would result in the destruction of Defendants' Easements and specifically in the lowering of Sorpresa Lane to such an extent that it no longer provides reasonable access to Defendants' properties.

79.    The completion of this work was done recklessly and without regard to Defendants' rights in and to the Easements.

80.    Plaintiffs and Third Party Defendants negligent failure to address and or vacate the Defendants' Easements resulted in property damage to the roadways on the Easements and caused the personal injuries of discomfort, annoyance, emotional distress, and mental anguish to each of the Defendants.

81.    The lowering of Sorpresa Lane has also created an attractive nuisance where Sorpresa Lane was lowered 10 to 12 feet in elevation.

82.     The design and development of the Cumbre Vista subdivision by KF-103 and Keller Homes and/or their subcontractors and agents constitutes negligence in that it ignores the Defendants [sic] rights in and to the Easements and Defendants' properties and creates an attractive nuisance for neighborhood children for which Defendants could be held legally responsible.

83.     In addition the bringing of this lawsuit by KF-103 against Defendants without first satisfying the legal requirements as set forth in Plaintiffs' complaint constitutes negligence by KF-103 and its agents and employees.

84.     Plaintiffs and Third Party Defendants [sic] failure and refusal to comply with the legal standards set for [sic] in Plaintiffs' complaint constitutes wanton and willful conduct and was done heedlessly and recklessly without regard to the rights of the Defendants.

85.     As a direct and proximate result of the negligence of Plaintiffs and Third Party Defendants and their agents and employees as stated above Defendants have been damaged in an amount equal to the cost of restoring the easement and having to defend themselves against the untrue allegations set forth in Plaintiffs' complaint.

86.     As a result of the negligence of Plaintiffs and Third Party Defendants and their agents and employees and the closure and destruction of the Defendants' Easements, these Defendants have been damaged by the temporary loss of use of these easements for the period when the easements were first barricaded to the time the easements are fully restored and open for use by the public.

87.     In addition to the cost of restoring Defendants [sic] Easements as a direct and proximate result of Infinity's, KF-103's and Keller Home's actions these Defendants [sic] property values have also been greatly diminished and reduced, and these Defendants have been greatly inconvenienced in their ability to access their properties.

88.     The negligent actions of Plaintiffs and Third Party Defendants have directly and proximately caused Defendants to incur damages and losses, including, without limitation, the loss of safe, uninhabited access.

(Def.'s Ex. G at pp. 9-12, ¶¶ 68-88; *see also* Def.'s Ex. H at p. 8, ¶ 52).

The references in paragraphs 70, 71, 77, 78 to a "legal duty" and references in paragraphs

79, 80, 81, 84, 85, 86, and 88 to "negligence," "negligent failure," and actions taken "recklessly"

imply that the resulting violation of the Neighbors' Easement was unintended.  Those phrases

are merely conclusory.  Again, it is evident from the well-pleaded allegations that this is really a claim of trespass, premised on intentional conduct.

Even if those allegations might otherwise be read as pleading unintentional conduct, such an interpretation would be unwarranted because the El Paso County District Court, in its oral rulings dated October 13, 2010, and written order dated December 23 , 2010, already had found that KF 103 knowingly violated the Neighbors' Easement rights.

KF 103 contends that the complaint rule (also known as the "Four Corners Rule") precludes consideration of the El Paso County District Court's oral and written rulings following the trial in October 2010, and that American Family violated that rule when it declined to provide a defense.[4]  Those arguments fail.  Consideration of the El Paso County District Court's oral rulings dated October 13, 2010 and written order dated December 23, 2010 does not undercut the purposes of the Four Corners Rule because those orders *preceded* the filing of the counterclaims.  This case is unusual because the Court invited the filing of counterclaims after it ruled that the plaintiffs had violated the defendants' easement rights.  Here the Court's oral rulings on October 13, 2010 and its written order dated December 23, 2010 provide the context for the filing of the Neighbors' counterclaims in 2011 and 2012.

---

[4]KF 103 acknowledges that the El Paso County District Court's order dated November 26, 2012, is beyond the four corners of the counterclaims, but points to that order to show that it would found liable for negligence.  The judgment is on appeal, and for the purpose of determining the duty to defend, the order of the El Paso County District Court dated November 26, 2012 has not been considered.

KF 103 also contends that coverage is shown by the fact that American Family accepted the defense of Keller Homes, which was insured under an identical CGL policy.  (*See* Pl.'s Exs. 24 & 25).  It is beyond dispute that the Four Corners Rule precludes consideration of those facts, and accordingly, this order does not address that argument.

The Four Corners rule protects the insured's legitimate expectation of a defense and prevents the insured's defense in the underlying action from being compromised by a declaratory-judgment action brought by the insurer while the underlying action is in progress. *See Cotter*, 90 P.3d at 828; *Hecla*, 811 P.2d at 1090. In *Pompa v. American Family Mutual Insurance Co.*, 520 F.3d 1139 (10th Cir. 2008), the Tenth Circuit predicted that "the Colorado Supreme Court would recognize an exception [to the Four Corners Rule] when doing so would not undercut the purposes served by the rule." 520 F.3d at 1147. The Tenth Circuit also observed that "judicially noticeable facts" are incorporated into the complaint. *Id.* at 1149. *See also Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1194 (10th Cir.2010) (predicting that the Colorado Supreme Court would recognize an exception to the Four Corners rule "requiring an insurer to consider facts which it is aware of in parallel complaints that tend to show a duty to defend ... ").

In *United Fire & Casualty Company v. Boulder Plaza Residential, LLC*, 633 F.3d 951 (10th Cir. 2011), the Tenth Circuit explained that its holding in *Pompa* is "based on the expectation that the Colorado Supreme Court would recognize an exception to the complaint rule if an insured's complaint contained allegations made in bad faith and "framed to trigger an insurance policy." 633 F.3d at 960 (quoting *Pompa*, 520 F.3d at 1149).

In light of the El Paso County District Court's determination that KF 103 and the Metropolitan District had violated the Easement with knowledge of the Neighbors' rights in it, KF 103 could not have had a legitimate expectation that American Family would fund its defense in subsequent proceedings regarding the remedies to be imposed for that intentional

conduct.  It is of no consequence that the Court orders referred to KF 103 and the Metropolitan

District jointly as "the developer."

The counterclaimants were entitled to plead alternative theories, but when they included

claims of negligence in their counterclaims, KF 103's knowing violation of the Easement was

already established.  The Marchants' and Peck's 2012 Counterclaims supplemented the

allegations of negligence, which suggests that the new allegations may have been added as an

attempt to trigger insurance coverage.  But even if they were not, the Four Corners Rule does not

preclude consideration of the orders of the El Paso County District Court that preceded the filing

of both sets of Counterclaims.

In short, coverage was not triggered because the counterclaims did not allege property

damage or bodily injury resulting from an "occurrence."

Coverage is not triggered for the additional reason that the counterclaims do not allege

"bodily injury""or "property damage" as those terms are defined in the Policy.

"Bodily injury" is defined in the Policy as, "bodily injury, sickness or disease by a

person, including death resulting from any of these at any time."  (Def.'s Ex. A at AmFam

000022).

In *National Casualty Co. v. Great Southwest Fire Insurance Co.*, 833 P.2d 741, 746

(Colo. 1992), the Colorado Supreme Court concluded that the term "bodily injury," which was

defined in the subject insurance policy as "bodily injury, sickness, or disease," covers only

physical injury and does not include claims for purely nonphysical or emotional harm.  The

Colorado Supreme Court held that without allegations of physical injury, physical contact, or

pain, the underlying plaintiff's claim of emotional distress did not fall within the general liability

policy's coverage for bodily injury.

Here the counterclaimants allege emotional distress and "physical discomfort," but those allegations are not sufficient to bring the claims within the definition of "bodily injury" because there are no allegations of any physical manifestations of the alleged emotional harm.

The term "property damage" is defined in the Policy as:

a.    Physical Injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Def.'s Ex. A. at AmFam 000024).

The term "tangible property" means "that which is capable of being handled, touched, or physically possessed." *Lamar Truck Plaza, Inc. v. Sentry Ins.*, 757 P.2d 1143, 1144 (Colo. App. 1988) (observing that purely economic damages are not included within the term "property damage" in a comprehensive general liability policy).

An easement is an interest in land owned by another that entitles its holder to a specific limited use or enjoyment.  It is an intangible property right.

The Neighbors' allegations of damage to their Easement rights do not constitute "property damage," nor do their allegations of damages stemming from interference with access to their residences.

The Neighbors alleged damage to the roadways, but they do not claim ownership of the roadways and those allegations pertain to their claimed loss of Easement rights.

Even if the Counterclaims could be read to include allegations of damage to tangible

property or loss of use of tangible property, they cannot be interpreted as alleging that such

damage or loss of use was caused by an accident.

In sum, the coverage provided in the Insuring Agreement was not triggered.

Accordingly,  exclusions to coverage need not be addressed.

Because American Family had no duty to defend, it also had no duty of indemnification.

Based on the foregoing, it is

ORDERED that the Plaintiff's motion for summary judgment [# 22] is denied and the

Defendant's motion for summary judgment [#20] is granted.

The Clerk shall enter judgment dismissing this action and awarding costs.

Date:  September 5, 2014

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior District Judge